627 So.2d 164 (1993)
James BOWIE, Jr., Bobby Joe Howell, Sr., & Seashore Utilities, Inc.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
Nos. 92-CA2236, 92-CA2237.
Supreme Court of Louisiana.
November 29, 1993.
*165 Carolyn L. DeVitis, Baton Rouge, Michael R. Fontham, Paul L. Zimmering, New Orleans, for applicant.
Theodore G. Edwards, IV, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette, Charles William Roberts, M.J. Bodenhamer, Baton Rouge, Domengeaux & Wright, Hammond, for respondent.
DENNIS, Justice.[*]
This case presents the question of whether the Louisiana Public Service Commission has power to prohibit the sale of 100% of the capital stock of a public utility as being contrary to the public interest. The Commission's order disallowing such a sale of all of the stock of two water and sewerage service corporations was reversed by the district court. On original hearing, this court affirmed, holding that in the absence of a statute expressly granting such authority the *166 Commission lacked power to prohibit the sale of a utility's stock. We granted a rehearing because of the restriction imposed by that decision on the broad constitutional powers of the public service commission to regulate all common carriers and public utilities.

1.
The opinion of this court on original hearing correctly stated the background facts and procedural history of the case.

2.
Article IV § 21(B) of the 1974 Louisiana Constitution provides:
(B) Powers and Duties. The [public service] commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
This provision delegates to the Public Service Commission the exclusive and plenary power to regulate all common carriers and public utilities. The Commission's power in this regard is as complete in every respect as the regulatory power that would have been vested in the legislature in the absence of Article IV § 21(B). Therefore, the legislature's acts or omissions can not subtract from the Commission's exclusive, plenary power to regulate all common carriers and public utilities. Cajun Electric Power Cooperative, Inc., v. LPSC, 544 So.2d 362 (La.), cert. denied 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 536 (1989); Cajun Electric Power Cooperative, Inc., v. LPSC, 532 So.2d 1372, 1380, 1381 (La.1988) (on original hearing) (Dennis, J. dissenting) (Calogero, J. dissenting); South Central Bell Telephone Co. v. LPSC, 412 So.2d 1069, 1070 (La.1982); Central Louisiana Electric Co. v. LPSC, 373 So.2d 123, 128 (La.1979); Louisiana Consumers' League Inc. v. LPSC, 351 So.2d 128, 131 (La.1977).

3.
The Public Service Commission is created for the purpose of exercising regulatory police power over all common carriers and public utilities and compelling the performance of their public duties for the benefit of the state and its citizens. Morehouse Natural Gas Co. v. LPSC, 242 La. 985, 140 So.2d 646 (1962); Southern Bell Telephone & Telegraph Co. v. LPSC, 187 La. 137, 174 So. 180 (1937). Accordingly, the constitutional provisions creating and granting powers to the commission must be construed with practicality and liberality in order to accomplish their objects and to enable the Commission to perform the duties required of it by the people. Moreover, Article IV § 21(B) expressly authorizes and requires the Commission to adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties. See Louisiana Consumers' League, Inc. v. LPSC, 351 So.2d 128, 132 (La.1977) (Concurring opinion). Consequently, the Commission is vested explicitly and implicitly with the constitutional power necessary to the performance of its function of regulating common carriers and public utilities through the adoption and enforcement of reasonable rules and orders requisite to these purposes. See Cajun Electric Power Cooperative, Inc., v. LPSC, 544 So.2d 362 (La.1989); Consumers' League Inc. v. LPSC, 351 So.2d 128 (La.1977); Denegre v. LPSC, 257 La. 503, 242 So.2d 832 (La.1971).

4.
In our opinion, a rule or regulation prohibiting the sale of all of the stock in a closely held corporate public utility without a prior determination by the public service commission that the transfer of ownership will be consistent with the public interest is necessary to the proper performance of the agency's regulatory function. Even though the balance sheet of a corporation is not affected when the ownership of stock is transferred, in reality the transfer of the ownership of a closely held corporation through a stock purchase presents significant possibilities of affecting the management, technical expertise, credit worthiness, and stability of the corporate utility. As the opinion of this court on original hearing indicates, in at least twenty-two states where the public utilities commissions are not vested with autonomous regulatory powers, the legislatures by law have granted commissions *167 the authority to regulate the transfers of public utilities' corporate stock. The Federal Energy Regulatory Commission has also been empowered with this authority through legislation. See Re Central Vermont Public Service Corp. 84 PUR 4th 213, 1987 WL 257899 (FERC 1987). In states where the authority to regulate public utility stock transfers has not been expressly granted, the implied power has been found in the statutes or constitutions creating the commissions. Re Pacific Power and Light Co. 96 PUR 4th 371, 1988 WL 391296 (Mont.Pub.Serv. Comm'n 1988); Pub. Serv. Comm'n v. Cities of Southgate, etc., 5 PUR 3d 519, 268 S.W.2d 19 (Ky.Ct.App.1954). In these other jurisdictions it is well settled that whether the power to regulate is express or implied, the public utilities commission has the power to disallow the sale, lease, mortgage, encumbrance, or other transfer of the properties of public utilities until the commission determines that the purchaser is ready, willing, and able to continue providing adequate service and that the transfer is consistent with the public's interest. Committee of Consumer Services v. Public Service Commission of Utah, 595 P.2d 871 (Utah, 1979), cert. denied 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 644 (1980); City of Catlettsburg v. Public Service Comm'n of Kentucky, 486 S.W.2d 62 (Ct. App.Ky.1972); Blue Grass State Telephone Co., v. Public Service Comm'n of Kentucky, 382 S.W.2d 81 (Ct.App.Ky.1964); Pacific Power and Light v. Federal Power Comm'n, 111 F.2d 1014, 1016 (9th Cir.1940). Because our Public Service Commission is vested with plenary regulatory power by a self-executing constitutional provision, the Commission can on its own initiative adopt and enforce reasonable rules and procedures necessary to govern the regulation of corporate stock transfers having potential detrimental effects upon the public interest.

5.
As a general rule, an administrative agency, such as the Public Service Commission, may use its informed discretion in choosing whether to establish rules, standards, or policies in an individual adjudication rather than in a rulemaking proceeding. SEC v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). As a plurality of the Supreme Court observed in that case:
Since the Commission, unlike a court, does have the ability to make new law prospectively through the exercise of its rule-making powers, it has less reason to rely upon ad hoc adjudication to formulate new standards of conduct within the framework of the Holding Company Act. The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.... Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule.... [T]he agency must retain power to deal with the problems on a case-by-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency. Id. at 202-03 [67 S.Ct. at 1580-81].
See also National Ass'n for the Advancement of Colored People v. FPC, 425 U.S. 662, 668, 96 S.Ct. 1806, 1811, 48 L.Ed.2d 284 (1976) ("As a general proposition it is clear that the Commission has the discretion to decide whether to approach these problems through the process of rulemaking, individual adjudication, or a combination of the two procedures.")
The alternative to rulemaking that the Supreme Court had in mind in SEC v. Chenery Corp., however, was not unguided discretion to make a determination that would not be treated as a precedent. The Court was referring to the reasoned opinions written by the SEC in formal adjudications that are likely to be used as precedents. Consequently, reviewing courts have found that it is arbitrary for an administrative agency with substantive rulemaking power to fail either to use that power to make rules or to *168 develop precedents through adjudication. In such cases, administrative agencies without systems of adjudicative precedents have been judicially required to use their rulemaking power to provide guiding standards that would reduce otherwise unguided discretion. See Davis, 2 Administrative Law Treatise § 7:26 (2nd ed. 1979).
For example, in cases decided under the due process clause, courts have held that an agency must make selections among applicants for scarce governmental benefits on the basis of "ascertainable standards." Holmes v. New York Housing Auth., 398 F.2d 262 (2d Cir.1968) (applications for public housing); Hornsby v. Allen, 326 F.2d 605 (5th Cir.1964) (applications for retail liquor licenses). In White v. Roughton, 530 F.2d 750 (7th Cir.1976) an administrator of a general township assistance program had no "published standards for eligibility or the amount of aid given." At the instance of plaintiffs whose assistance was terminated or denied, the court held: "Defendant Roughton as administrator of the general assistance program has the responsibility to administer the program to ensure the fair and consistent application of eligibility requirements. Fair and consistent application of such requirements requires that Roughton establish written standards and regulations. At the hearing in the district court on the preliminary injunction, defendant Roughton admitted that he and his staff determine eligibility based upon their own unwritten personal standards.... Such a procedure, vesting virtually unfettered discretion in Roughton and his staff, is clearly violative of due process." Id. at 753-54. In remanding, the court suggested that the district court "should focus upon the development of written standards for eligibility and for the amount of general assistance which may be given." Id. at 755. See also, Baker-Chaput v. Cammett 406 F.Supp. 1134, 1139-40 (D.N.H.1976) ("The standardless administration of general assistance places the hungry and the poor at the administrator's whim... [T]he establishment of written, objective and ascertainable standards is an elementary and intrinsic part of due process."
Environmental Defense Fund v. Ruckelshaus, 439 F.2d 584 (D.C.Cir.1971) is an especially important case. The court held: "Judicial review must operate to ensure that the administrative process itself will confine and control the exercise of discretion. Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible." Id. at 598. The court was reviewing a refusal to suspend a registration of a pesticide, under a statute that the agency "may suspend ... to prevent an imminent hazard to the public." The agency had not issued regulations relating to suspension and had not explained its decision, although the agency had "an obligation to articulate the criteria ... in making each individual decision. We cannot assume, in the absence of adequate explanation, that proper standards are implicit in every exercise of administrative discretion." The court remanded for a new determination identifying "the factors relevant to that determination, and relating the evidence to those factors in a statement of reasons." Id. at 597. The case thus required a formulation of standards and a statement of findings and reasons showing how the standards have been applied. Davis, supra. See Save Ourselves v. Louisiana Environmental Control Comm'n, 452 So.2d 1152 (La.1984); Port Terminal Railroad Ass'n v. United States, 551 F.2d 1336 (5th Cir.1977).
In Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) the Supreme Court reversed a decision of the Bureau of Indian Affairs denying benefits to Native Americans under a federal assistance program. The BIA's internal policy of denying assistance to claimants because they lived outside of the reservations had not been communicated to the public. The Court held that this policy could not be implemented through ad hoc decisions, even if it was a reasonable response in light of the program's funding; the BIA had to issue valid rules published in the Federal Register prior to termination of the claimants' eligibility. These rules and procedures were required "so as to assure that [the agency's policy] is being applied consistently and so as to avoid both the reality and the appearance of arbitrary *169 denial of benefits to potential beneficiaries." Id. at 231, 94 S.Ct. at 1072. The Ruiz court asserted that: (1) the power of an agency to administer a program "necessarily requires ... the making of rules," Id.; (2) the policy of an agency extinguishing the rights of those otherwise in the class of beneficiaries is ineffective unless embodied in a legislative-type rule, Id. at 236, 94 S.Ct. at 1075; and (3) "[n]o matter how rational ... a particular decision might be, the determination of eligibility cannot be made on an ad hoc basis by the dispenser of funds." Id. at 232, 94 S.Ct. at 1073. However, as Professor Davis observed, Ruiz "went so far in the direction of requiring rules", Davis, supra at 132, that it has not been scrupulously followed by the Court in subsequent opinions or by the lower courts. See NLRB v. Bell Aerospace Co., 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). But, as he also observes, it goes "too far in the right direction." Davis, supra at 118. Thus, Ruiz serves as a constructive reminder to agencies and to reviewing courts that it is incumbent on an agency to articulate policies and to establish standards or guidelines to implement those policies, either through rulemaking or by precedent, to direct the agency's discretion.

6.
Applying the foregoing precepts to the present case, we conclude that the Public Service Commission has the constitutional power to adopt and enforce rules declaring that ownership of a closely held corporate utility may not be transferred unless the commission has determined that the sale of the utility is not detrimental to the public interest. Pursuant to its constitutional rulemaking power the Commission adopted two rules that, in pertinent part, provide:
[T]he sale, lease, merger, consolidation, or other change in the ownership of the assets of public utilities or any controlling part thereof subject to the jurisdiction of this Commission is hereby prohibited without first having obtained an order of authority from the Commission for such change in ownership. Order 6/16/53.
No utility ... shall enter into a contract, or combination of related contracts, convey, lease, or acquire assets of any kind, or incur any obligation, or to merge to combine with another utility, or carrier, or to divide into two or more utilities ... or affect any right, interest, asset or obligation involved in such action without ... approval ... by the Louisiana Public Service Commission. Order 6/7/68.
These rules, in themselves, however, do not afford a sufficient basis for the Commission's action in prohibiting the transfer of ownership of the utility in the present case.
First, because the Commission's action infringes to some extent upon the stock owners' rights to contract and to dispose of their private property, the rule must be strictly construed and only applications plainly warranted by its language may be made. See Wisconsin Southern Gas Co., Inc. v. Public Serv. Comm'n, 57 Wis.2d 643, 205 N.W.2d 403 (1973); Webster Mfg. Co. v. Byrnes, 207 Cal. 630, 280 P. 101 (1929). It is the responsibility of the administrative body to formulate, publish, and make available to concerned persons rules which are sufficiently definite and clear that persons of ordinary intelligence will be able to understand and abide by them. Environmental Defense Fund Inc. v. Ruckelshaus, 439 F.2d 584 (D.C.Cir.1971); Hill v. Federal Power Comm'n, 335 F.2d 355 (5th Cir.1964); Athay v. State, 626 P.2d 965 (Utah 1981). According to a literal reading of the rules, they deal only with changes in ownership of the assets of public utilities and with mergers and therefore may not be applied to prevent the transfer of corporate stock between individuals.
Second, even if the rules could be interpreted to apply to transfers of closely held corporate stock, under the circumstances of the present case the Commission's orders depriving such persons of the right to dispose of private property would constitute arbitrary action and a violation of the guarantees of due process. The Commission as an administrative agency has the responsibility to ensure the fair and consistent application of any of its rules tending to infringe upon private property rights by developing standards to guide its discretion either through precedents resulting from reasoned opinions rendered in adjudication or by rulemaking *170 resulting in written standards and guidelines. In the present case, the Commission has done neither but instead has followed a procedure that vests virtually unfettered discretion in the Commission to decide whether, in a particular case, corporate utility shareholders will be prohibited from disposing of their private property interests.
For the reasons assigned, we conclude that the district court reached the correct result in reversing the Public Service Commission order prohibiting the transfer of the capital stock of the two public utilities involved in the present case. Accordingly, the judgment of the district court is affirmed.
AFFIRMED.
WATSON, J., concurs for the reasons assigned in the original opinion.
NOTES
[*] Ortique, J. not on panel. Rule IV, Part 2, § 3.