685 So.2d 107 (1997)
Alma PLANTATION
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 96-CA-1423.
Supreme Court of Louisiana.
January 14, 1997.
*108 L. Richard Westerburg, Brian Andrew Eddington, Baton Rouge, for appellant.
James Ashton McCann, Galliano, for appellee.
GRAYDON K. KITCHENS, Jr., Justice Pro Tem.[*]
Gulf States Utilities Company, appellant to these proceedings, objects to a ruling of the District Court reversing the Louisiana Public Service Commission and remanding this case for a new evidentiary hearing because portions of the tape of the Commission's Open Session were unavailable. Because we find that the record of the Open Session of the Commission is not integral to a review of that decision, we reverse and remand to the District Court to review the Commission's decision under the appropriate standard of review.

FACTS AND PROCEDURAL HISTORY
Alma Plantation ("Alma") takes electric service from Entergy Gulf States, Inc. ("Gulf States"). Prior to March 1, 1991, Alma took electric service under Gulf States' General Service ("GS") Rate combined with a Rider for Seasonal Service ("SS Rider"). On January 19, 1994, Alma filed a letter of complaint with the Louisiana Public Service Commission ("Commission") alleging that Gulf States had violated a General Order of the Commission dated November 2, 1987. The Order required the utility to perform an annual rate comparison to determine the most favorable rate for customers, to inform them of the alternative rate, and to allow them the opportunity to select that alternative rate. Alma contended that from January, 1988 until March, 1991 it had been eligible for the Large General Service ("LGS") Rate with the SS Rider. Alma contended that if it had received the LGS Rate with SS Rider, it would have paid $44,068.96 less for electric service, and sought a refund from Gulf States in this amount. Alma subsequently amended this request to seek a refund of $53,848.23.
Gulf States responded by requesting a dismissal of Alma's claim on the basis that Alma was seeking to incorrectly apply the SS Rider to the LGS Rate. Gulf States contends the "Energy Charge" under both the GS and LGS Rates is determined by multiplying a fixed dollar amount by the amount of energy in kWh consumed by the customer during the billing month. In the case of the GS Rate this fixed energy charge is $2.70 perkWh. In the case of the LGS Rate, the charge is $1.60 per-kWh. Thus it is argued that the Energy Charge under the LGS Rate will always be lower for the same amount of kWh.
However, Gulf States claims that the opposite is true of the "Billing Load Charge" in each of these rates. The "Billing Load" is either the current month's highest measured 15-minute demand, or a percentage of a previously higher demand. Under the GS Rate, all kW of the Billing Load up to 5 kW are billed at a fixed $55.40 throughout the year. Every additional kW is billed at $2.50 during May through October and at $2.00 per kW from November through April. The LGS Rate provides a much larger fixed charge of $3,610.00 for all kW up to the first 1000 kW *109 from May through October, and then $3.50 per kW above 1000. There is a flat charge of $2,670.00 from November through April, with an additional $2.50 per kW above 1000 kW of billing Load.
Alma argued that Section D of the SS Rider permits the Billing Load to be the actual maximum kW load of the current month, but not less than 5 kW. Therefore, because Alma's Billing Load is substantially below 1000 kW during the off-season months, Alma claimed that its Billing Load Charge should be determined by dividing the flat charge under the LGS Rate by 1000 and then charging only for the actual monthly Billing Load at that price. However, Gulf States argued that Section D of the SS Rider modified only the Billing Load, in order to benefit seasonal customers who used very little energy during certain months, but that it did not alter the flat Billing Load Charge. Gulf States contended that Alma's interpretation amounts to an impermissible "mix and match" approach to rate interpretation.
The matter was set for hearing before Examiner Edward L. Gallegos on June 28, 1994. Alma chose to be represented by its employee Margaret Melancon rather than by counsel. After the hearing at which the testimony of witnesses was heard and evidence was adduced, the examiner took the case under advisement. In a written opinion dated July 29, 1994, the examiner found in favor of Gulf States and recommended that Alma's claim be dismissed.
The examiner's recommendation came before the Commission in its Open Session of November 9, 1994, with both Alma and Gulf States represented by counsel. The Commission unanimously voted to adopt the examiner's recommendation and dismiss Alma's claim. The Commission issued order No. U-20881 dismissing Alma's claim on December 2, 1994.
Subsequently, Alma's counsel attempted to obtain an audio tape of the Open Session of the Commission, and was informed that the recording had either not been made, or had been erased, due to technical difficulties.
On January 26, 1995, Alma filed an appeal of the Commission's decision to the 19th Judicial District Court. Alma argued that it qualified for the LGS Rate and the SS Rider and had suffered an adverse opinion, and the appeal focused on certain alleged procedural flaws, that, Alma claimed, constituted a denial of its constitutional right of due process and fairness.[1] On February 13, 1995, Counsel for the Commission filed a Motion for Extension of Time in Which to File Transcript. The evidentiary hearing before the examiner apparently had not been transcribed prior to the Open Session, but the audiotapes were available to the Commission. This lack of transcript of the proceedings before the examiner was an additional procedural defect that Alma alleged deprived it of its due process rights.
The parties agreed that the case would be heard as a Rule to Show Cause, in which only argument of counsel based on the previous Commission record would be considered. After the Rule was heard on October 16, 1995, the District Court remanded the matter for a new evidentiary hearing, stating: "The problem is I can't know, won't know, and I will never know if they were in fact arbitrary and capricious because of the missing transcript. I'm remanding this back."[2]

STANDARD OF REVIEW
The general rule is that an order of the Public Service Commission should not be *110 overturned unless it is shown to be arbitrary, capricious, a clear abuse of authority, or not reasonably based upon the factual evidence presented. Washington St. Tammany Electrical Coop., Inc. v. Louisiana Public Service Comm'n, 95-1932 (La.4/8/96), 671 So.2d 908, 912; Radiofone, Inc. v. Louisiana Public Service Comm'n, 573 So.2d 460, 461 (La. 1991). The function of the reviewing court is not to re-evaluate and re-weigh the evidence, or to substitute its judgment for that of the Commission. Washington St. Tammany, supra, at 912; Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 343 So.2d 1040, 1044 (La.1977). The Commission is entitled to deference in its interpretation of its own rules and regulations, though not in its interpretation of statutes and judicial decisions. Washington St. Tammany, supra, at 912; Dixie Electric Membership Corp. v. Louisiana Public Service Comm'n, 441 So.2d 1208, 1211 (La.1983).
The trial court appears to have used an incorrect standard of review in this case. The District Judge stated that he was remanding the case because he did not have a record of the Open Session, and could not know exactly how the Commission came to its conclusions. However, the trial court did not need to know the decision-making or thought processes of the Commission, as long as their decision was reasonably supported by the record of the evidentiary hearing before the Examiner. The operative factor is whether the record before the reviewing court is complete so the Court can determine whether the Commission's ruling was arbitrary, capricious, a clear abuse of authority, or not based on factual evidence. The record before the District Court contained the typed transcript and all that is needed for that determination.
The absence of the transcript at the time of the Open Session was not a fundamental defect sufficient to prevent the trial court from making its ruling. Although the transcript had not been typed, the tape was available to the Commission at the time of their hearing. Whether they actually read the transcript is not the concern. It is not the function of the reviewing court to inquire into the mental processes of administrative decision makers. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825-26, 28 L.Ed.2d 136 (1971); United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 1004-05, 85 L.Ed. 1429 (1941); Gulf States Utilities Co. v. Louisiana Public Service Comm'n, 578 So.2d 71, 82-84 (La. 1991). The concern is whether the record was before them.
Alma makes much of this Court's statement in Washington St. Tammany, that it is "inappropriate for the Commission to make a decision on the basis of an incomplete record." Id. at 911, n. 1. In Washington St. Tammany, as in this case, the tape of the hearing before the commission broke before it could be transcribed. In that case, this Court could not tell if the record of the evidentiary hearing before the hearing officer was available to the Commissioners at all. Id. at 911, n. 1. In contrast, in this case the record was available to the Commission, although not yet typed at the time of their decision. This flaw did not affect the decision in Washington St. Tammany, either, however. That case was reversed for another reason.
Washington St. Tammany involved the interpretation of legislation by the Commission, which is entitled to less deference than the interpretation of rules and regulations such as those involved in this case. In this case, the Commission was reviewing a rate interpretation ruling, and it did so with the record before it. The trial court must be mindful of this distinction in reviewing the Commission Order, and the appropriate standard of review must be used.
For these reasons this case is remanded to the District Court for a decision using the correct standard of review.
JOHNSON, J., not on panel.
NOTES
[*] Judge Graydon K. Kitchens, Jr., 26th Judicial District Court, and Judge Ian W. Claiborne, 18th Judicial District Court, participating as associate justices ad hoc in place of Justice Jack C. Watson and Justice E. Joseph Bleich. Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Although all of these allegations will not be discussed in detail, the following claims of defect were made: Alma was not represented by counsel; the Examiner did not allow Alma to crossexamine the Company's witnesses: Alma did not initially have a copy of the transcript of the proceedings, (but obtained one prior to the court's consideration of the appeal); the audiotape of the Open Session was not available; and the Examiner did not investigate a mistake in a rate rider produced by Gulf States during discovery.
[2] District Court Transcript of 10/16/95, at 23. The "missing transcript" referred to is the portion of the audiotape of the Open Session of the Commission which was lost, not the belatedly typed transcript of the hearing before the Examiner. Although the stated reason for remand was the flaw in the Commission record, the District Court nevertheless, on October 24, 1995, signed a Judgment on Rule to Show Cause ordering that a new evidentiary hearing be instituted before the examiner.