707 So.2d 28 (1998)
GLOBAL TEL*LINK, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 97-CA-0645.
Supreme Court of Louisiana.
January 21, 1998.
Dissenting Opinion January 27, 1998.
Rehearing Denied March 13, 1998.
*29 Basile J. Uddo, Frank J. Uddo, Paul L. Zimmering, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans; Brian A. Eddington, Baton Rouge, for Appellant.
T. Michael Twomey, New Orleans, for Appellee.
Dissenting Opinion of Justice Lemmon, January 27, 1998.
KIMBALL, Justice.[*]
This matter is before the court as a direct appeal from the Nineteenth Judicial District Court pursuant to La. Const. art. IV, § 21(E). The Louisiana Public Service Commission and Global Tel*Link, Inc. appealed portions of the trial court's ruling regarding the imposition and enforcement of the Commission's order that all Customer Owned Coin Operated Telephone service providers, such as Global, bill for calls within 60 days after they are initiated. We hold that neither *30 the Commission's 60-day rule nor its decision to deny Global an exemption from that rule is arbitrary and capricious. We conclude, however, the Commission's orders that Global refrain from billing or collecting in violation of the rule and that Global refund all sums collected in violation of the rule are arbitrary and capricious and beyond the Commission's authority. As such, the ruling of the trial court is affirmed in part and reversed in part.

FACTS AND PROCEDURAL HISTORY
In 1990, by Order No. U-16462-E, the Louisiana Public Service Commission ("Commission") established comprehensive guidelines for all Customer Owned Coin Operated Telephone companies ("COCOT") to govern the operation of their businesses. Included in this Order is a requirement that COCOTs submit billings to customers utilizing their services within 60 days from the date the call was initiated. Global Tel*Link, Inc. ("Global"), an appellant herein, is a COCOT operating in Louisiana.[1]
In June, 1993, Global entered into a contract with the Louisiana Department of Public Safety and Corrections to provide inmate phone systems in sixteen state correctional facilities. After Global began administering the inmate phone systems, the Commission received numerous complaints concerning Global's bills. Among the complaints were allegations that Global double-billed the same call, charged exorbitant prices, and added time to a call. Consumer complaints increased through the end of 1993, and, in February, 1994, the Commission instituted a formal investigation into the billing practices of Global.
During the course of the Commission's investigation into the billing practices of Global, four areas in which Global's activities led to overcharges to consumers were identified. These areas included:
(1) Clock Advancements;
(2) Rates Exceeding Authorized Levels;
(3) Addition of Charges to Calls after the Calls were Rated and Addition of Time to Completed Calls; and
(4) Duplicate Billings.
Order No. U-20784-B.
In the area of clock advancements, the Commission found that Global programmed the clocks in its telephones at correctional institutions to add either 15 or 36 seconds to the duration of each call. The Commission explained in Order No. U-20784-B that the timing of a call should begin to run when the connection is made and should start at "0" seconds. The clocks in Global telephones, or those telephones programmed by Global, started at 15 or 36 seconds rather than at 0 seconds. This is significant because telephone companies "round up" to the next minute when timing calls for billing purposes.[2] The Commission found that Global's practice of advancing the clocks was unauthorized and could have only been designed to artificially inflate charges to its customers. The overcharges associated with time clock advancements were approximately $60,000.00, exclusive of interest. Global was ordered by the Commission to refund the entire amount of overcharges resulting from the illegal clock advancements plus 10% interest.
Regarding unauthorized rates, the Commission found that until June, 1994, Global's tariffs were inconsistent with the rates it was authorized to charge under the Commission's rate caps. The Commission also found that prior to June, 1994, Global programmed its telephones to use rates higher than those permitted by both its own tarriffs and the rate caps established by the Commission. Thus, not only did Global charge in excess of the Commission's authorized rates, but its tarriffs were inconsistent with authorized rates and Global's charges even exceeded its own unauthorized tarriffs. The total amount *31 of overcharges associated with Global's billing at unauthorized rates was approximately $906,000.00, exclusive of interest. In Order No. U-20784-B, the Commission ordered that Global refund this entire amount plus 10% interest.
The Commission found that a third practice engaged in by Global to fraudulently overcharge its customers was to add various amounts of money to charges for calls after the calls were rated. It also found that Global added time to the duration of completed calls. These so-called "add-ons" were made possible by a computer program run by Global against the call records. These programs resulted in the addition of 25¢, 50¢, and/or 85¢ to the charges that Global would have otherwise billed.[3] Regarding this practice, the Commission aptly stated:
The use of add-on programs is perhaps the most insidious and problematic of all of Global's activities. It could be designed for no other purpose than to unlawfully overcharge customers and the practice of adding time to cover-up the additional dollar amounts which were added to the calls is evidence of the intentional and purposeful nature of this activity. No excuse could possibly exist for such action.
Order No. U-20784-B at p. 9.
The overcharges resulting from the use of these add-on programs amounted to approximately $256,000.00, excluding interest. Global was ordered by the Commission to credit and/or refund this amount with 10% interest to its affected customers.
A fourth fraudulent practice engaged in by Global was duplicate billings. This practice, which lasted only a brief period of time, involved charging for the same call on two different bills. For example, a call might appear on the April, 1994, bill, and then that same call would again appear on the June, 1994, bill. Exclusive of interest, the total amount of overcharges associated with this practice was approximately $16,000.00. Global was ordered to refund this amount plus 10% interest.
Although these fraudulent overcharges are not currently before this court as they have been resolved by the parties, they nevertheless serve to illustrate the way Global conducted its business in Louisiana. Furthermore, they tend to show the ongoing nature of the relationship that existed between the Commission and Global when the Commission became aware of yet another violation of its orders by Global.
This new violation was discovered during the course of the Commission's investigation when Global's management realized that calls continued to be improperly rated because the system used to rate call records which were used to compile customers' bills was malfunctioning. Consequently, Global decided to cease the use of this phone-based rating system and to upgrade the billing system so that all call rating would be done by Global's Alabama facility. As a result of this realization and ensuing decision, combined with its history of billing inaccuracies, Global decided to delay billing for its calls until this rating problem was rectified. Global indicated it withheld these bills to avoid sending out incorrect bills.
Once Global resumed billing, inmate organizations and Global customers filed complaints with the Commission alleging that Global was in violation of the 60-day rule enunciated in Order No. U-16462-E. This Order states in pertinent part:
End User Billing
COCOT service providers and those AOS companies providing operator services for COCOTS must submit billings to end users for calls placed from their instrument within 60 days from the date the call was initiated.
The Commission verified that these allegations were true and responded by issuing Order No. U-20784 which was adopted at the Commission's November 9, 1994, Open Session. That Order "directed [Global] to comply with the provisions of Order No. U-16462-E and cease and desist from billing any customer for calls initiated more than *32 sixty days prior to the customer's billing date."
Believing that Global continued to bill for calls that were more than 60 days old, the Commission adopted Order No. U-20784-A at its next meeting in December of 1994. In that Order, the Commission again directed that Global comply with Order Nos. U-16462-E and U-20784 and cease billing for calls made more than 60 days prior to the billing date. The Commission also ordered that Global cease collecting for such calls.
After this Order was issued, Global filed suit in the Nineteenth Judicial District Court challenging Order No. U-20784-A. In this suit, Global requested a stay or a temporary restraining order and a preliminary injunction enjoining the Commission from enforcing Order No. U-20784-A which prohibited Global for collecting for calls billed in violation of Order No. U-16462-E. On January 23, 1995, the trial court denied Global's request for a stay or a temporary restraining order and a preliminary injunction and remanded the case to the Commission for a hearing on the issue of whether Global should be exempt from the 60-day rule.
This hearing was held wherein testimony was presented and both the Commission and Global were represented by counsel. After these hearings, the Commission considered this matter at its April 27, 1995, meeting where it voted to deny Global's request for an exemption from the 60-day rule.[4] The Commission reiterated its order that Global could not collect for any call billed in violation of the 60-day rule and directed that Global refund any sums collected in violation of the rule.
Global appealed this decision to the Nineteenth Judicial District Court. After a hearing on this matter on September 8, 1995, the trial court affirmed that part of the Commission's Order that denied Global's request for an exemption from the 60-day rule and prohibited Global from billing for calls more than 60 days after they were made. The trial court specifically found that the 60-day rule is not unreasonable, arbitrary, or capricious and that the record demonstrates the Commission did not act in an arbitrary and capricious manner with respect to these portions of the Order. The trial court reversed that part of the Commission's Order that required Global to refund in full all monies collected for calls billed in violation of the 60-day rule. The court specifically found that the refund requirement was not fair and equitable. Both parties appeal various portions of the trial court's ruling directly to this court pursuant to La. Const. Art. IV, § 21(E).[5]
The issues presented by these appeals are: (1) whether the Commission was authorized to enact the 60-day rule at issue; (2) whether the Commission could validly deny Global an exemption from this rule; (3) whether the Commission could validly deny Global the right to collect in violation of the rule; and (4) whether the Commission could require Global to refund payments collected in violation of the 60-day rule.

*33 DISCUSSION

A. Powers and Duties of the Commission
Article IV, § 21(B) of the Louisiana Constitution establishes the Commission's powers and duties, stating:
(B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
This provision gives the Commission constitutional jurisdiction over public utilities and has been interpreted as granting the Commission independent and plenary power to regulate public utilities. Gulf States Utilities Co. v. Louisiana Public Service Com'n, 92-1185 (La.3/17/94), 633 So.2d 1258. Commenting on the plenary powers the Commission is given by this constitutional provision, we stated in Bowie v. Louisiana Public Service Com'n:
The Commission's power in this regard is as complete in every respect as the regulatory power that would have been vested in the legislature in the absence of Article IV Sec. 21(B). Therefore, the legislature's acts or omissions can not subtract from the Commission's exclusive, plenary power to regulate all common carriers and public utilities.
627 So.2d 164 (La.1993) (citations omitted).
The Commission is created to exercise regulatory police power over public utilities, to compel the performance by utilities of their public duties, and to safeguard the interests of the utilities and the public. Morehouse Natural Gas Co. v. Louisiana Public Service Com'n, 242 La. 985, 140 So.2d 646 (1962). Consequently, the Commission is vested explicitly and implicitly with the constitutional power necessary to perform its function of regulating public utilities through the adoption and enforcement of reasonable rules and orders fundamental to these purposes. Bowie, 627 So.2d at 166.

B. Standard of Review
The general rule governing judicial review of an order of the Commission is that the order is accorded great weight and should not be overturned unless it is shown to be arbitrary, capricious, clearly abusive of its authority, or not reasonably based upon the evidence presented. Alma Plantation v. Louisiana Public Service Com'n, 96-1423 p. 5 (La.1/14/97), 685 So.2d 107, 109; Washington-St. Tammany Elec. Co-op., Inc. v. Louisiana Public Service Com'n, 95-1932 p. 5 (La.4/8/96), 671 So.2d 908, 912; Radiofone, Inc. v. Louisiana Public Service Com'n, 573 So.2d 460, 461 (La.1991); Dixie Elec. Membership Co-op. v. Louisiana Public Service Com'n, 509 So.2d 1002, 1007 (La.1987). A Commission order is arbitrary and capricious only when the record does not and could not reasonably support its finding. Ken-Go Services, Inc. v. Louisiana Public Service Com'n, 483 So.2d 141, 142 (La.1986). The function of the court on judicial review is not to re-evaluate and re-weigh the evidence, nor is it to substitute its judgment for that of the Commission which is the expert body constitutionally entrusted with regulation of the matter. Alma Plantation v. Louisiana Public Service Com'n, supra at p. 5, 685 So.2d at 110; Washington-St. Tammany Elec. Co-op., Inc. v. Louisiana Public Service Com'n, supra at p. 5, 671 So.2d at 912; Gulf States Utilities Co. v. Louisiana Public Service Com'n, 96-0345 p. 2 (La.7/2/96), 676 So.2d 571, 573. The reviewing court should afford deference to the Commission's application and interpretation of its own orders because the Commission is an expert within its own specialized field and is therefore in the best position to apply its own rules and regulations. Dixie Elec. Membership Corp. v. Louisiana Public Service Com'n, 441 So.2d 1208, 1211 (La.1983). See also Alma Plantation v. Louisiana Public Service Com'n, supra at p. 5, 685 So.2d at 110; Washington-St. Tammany Elec. Co-op., Inc. v. Louisiana Public Service Com'n, supra at p. 6, 671 So.2d at 912.
Related to this standard of review is the presumption that orders of the Commission are legal and proper. Dixie Elec. Membership Co-op. v. Louisiana Public Service *34 Com'n, supra at 1007; Louisiana Oilfield Carriers Ass'n, Inc. v. Louisiana Public Service Com'n, 281 So.2d 698, 700 (La.1973). Accordingly, the burden rests upon the party attacking an order of the Commission to show that the order is defective. Monochem, Inc. v. Louisiana Public Service Com'n, 253 La. 1047, 221 So.2d 504, 510 (1969).

C. The 60-day Rule
Under La. R.S. 45:1164, the power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by public utilities except in the Parish of Orleans and other exceptions set forth in the statute. The Commission shall adopt all reasonable and just rules, regulations, and orders affecting or connected with the service and operation of a telephone business. La. R.S. 45:1166(A). Pursuant to these provisions, as well as La. Const. Art. IV, § 21(B), the Commission has broad power to regulate the service of telephone utilities. South Central Bell Tel. Co. v. Louisiana Public Service Com'n, 352 So.2d 999, 1003 (La.1977).
The 60-day rule is contained in Order No. U-16462-E of the Commission entitled, "In re: Customer Owned Coin Operated Telephone Service, Approval of Access Line Tariffs and Establishment of Regulations and Guidelines." The purpose of this Order was stated by the Commission:
In this Order we will address both the "rates and compensation" and the "competitive practices" issues raised by the COCOTS. Obviously some of these issues overlap. In addition we will promulgate regulations setting minimum standards and reporting requirements for all COCOTS.
Order No. U-16462-E p. 5.
The record before us contains testimony which sufficiently elucidates the reasons behind the Commission's imposition of the 60-day rule. At the court-ordered hearing on April 12, 1995, Mr. Arnold Chauviere, an analyst for the Commission who works in the Utilities Division which is responsible for dealing with the regulation of the telecommunications industry, was cross-examined by Global's counsel regarding the reason for the Commission's adoption of the 60-day rule. Mr. Chauviere testified as follows:
[I]t would be my opinion that the Commission voted for the 60-day rule because of the problems that they were having with the telecommunications industry in particular the operator service providers, and that they felt that this was a reasonable amount of time in which a bill should be rendered and paid or rendered, I guess, by the local exchange company to the customer to be billed.... [T]he Commission had been receiving complaints dealing with the way the calls were being rated, the fact that maybe some of the calls were not timed correctly; just the general complaints that deal with operator service problems, that, I guess, plagued the Commission.... It's not a case where the Commission is issuing these orders without, I guess, cause or without having some justification for going back and revisiting the issue to correct problems that have come up in the past regarding operator service billings.... There are problems that are in that industry and this was one mechanism to try to straighten out those problems....
You have to realize, Mr. Uddo [Global's attorney], that I think thewhen we're talking [about] the 60-day rule here, I think what the Commission is trying to do is make sure that the consumer, who actually received the call, can document that he had received the call and that the call actually took place. The longer you wait, the less chance that he is going to be able to remember that he had received 20 or 30 or 40 or 50 calls, from a correctional facility in this case. So, it's kind of tough, particularly in the case where some companies that we've checkedand this is not necessarily Global, but some of the othershave double and triple billings, where two different companies billed for the same call. This gets very confusing to some of the customers. And the longer you would wait on something like this, the longer it would beor the harder it would be for the customer to be able to determine whether or not he actually received the call *35 or not, or if the call was a double billed call or a triple billed call.
(Tr. 4/12/95 at 137-139; 205-206)
At the Commission's April 27, 1995, meeting, Commissioner Kathleen Blanco, who was a Commissioner when the Order containing the 60-day rule was adopted, gave a similar explanation of the Commission's reasons for the issuance of the rule. She stated:
I would like to clarify, perhaps some of the inten[t] of the order. When competition came into the market place in customer owned coin operated telephones that we so fondly call COCOTs[, t]here was a tremendous amount of abuse. People did not know that they were being charged excessively. They assumed that they would be charged the same amount that they had always been charged on pay phones. And companies came in and just felt like they could charge whatever the market would bear, and this Commission did not feel that that was fair to the customers. And if customers had to wait three and four and five and six months to find out that the pay phones that they were using had these exorbitant costs on it, we didn't think that was fair to the customers. And for all those reasons and many many more, this Commission went through an agonizing, and I want to stress agonizing process, to get to the bottom of that COCOT order. And lots and lots of people had a lot of input into that process. And so I believe that our process was extremely just, and came down on the side of the customers, and it was also fair to the companies. But, you know, in this nation we like to look at competition in its fondest light and sometimes we think that's the most ideal situation, but when you have captive customers and they don't know what they're paying, it doesn't work. It simply doesn't work.
(Tr. 4/27/95 at 15-16)
As illustrated by the excerpts quoted above, there are numerous justifications for the Commission's adoption of the 60-day rule. This expert regulatory body's conclusion that the 60-day rule would assist in alleviating some of the problems it was experiencing with the COCOT industry appears to be a reasonable one and is supported by the record. As explained in the preceding section, an appellate court is not to substitute its judgment for that of the Commission. The Commission's rules are presumed legal and proper and Global has failed to adequately demonstrate that the 60-day rule was unreasonable. Furthermore, the Commission was acting within its authority when it enacted the 60-day rule. For these reasons, the 60-day rule is upheld as a valid exercise of the Commission's constitutionallyvested authority over public utilities.

D. Commission's Decision to Deny Global an Exemption from the 60-day Rule
After a hearing on the issue of whether Global was entitled to a waiver of the 60-day rule, the Commission issued Order No. U-20784-C wherein it denied Global's request for a waiver for several reasons. Global argues that the Commission acted arbitrarily and capriciously when it declined to waive the billing limitation imposed by the 60-day rule because Global should not be penalized for its good faith attempt to ameliorate the problems it was experiencing with its rating system. At the hearing, Global presented five arguments in support of its request for an exemption from the rule. These arguments were summarized by the Commission in Order No. U-20784-C as follows:
1. Knowledge of the Rule

Global takes the position that when it began operations in Louisiana it did not know of the existence of the 60-day Rule and did not learn about it until long after it had been operating in the State.
2. Delays in Establishing Centralized Billing

Global's attempt to establish a centralized billing system took far longer than it had anticipated and caused bills to be delayed.
3. Outside Factors

Numerous problems can crop up in the billing process both at Global and with the local exchange company which can cause delays in having charges appear on customer's bills.
4. Wire Center/Rate Center Questions *36 Global was unsure as to whether to bill from wire centers or rate centers and this held up the billing of calls.
5. Practice in Other Jurisdictions Other jurisdictions permit calls to be billed in excess of 60 days from the time the calls were made.
With respect to Global's first argument regarding its knowledge of the rule, the Commission stated it is the responsibility of every regulated utility in this state to know what is required to comply with the lawful rules and regulations in place before it begins operations in the state. Furthermore, Global's own witness, Mr. James Smith, testified that companies such as Global should not begin to operate in a state until it is familiar with all applicable rules and regulations. The Commission concluded that whether or not Global actually knew of the rule, it should have known of the rule before it began to operate in Louisiana.
Regarding Global's second argument, the Commission found Global was aware of its billing problems as early as January, 1994, and could have begun to remedy these problems earlier so that its June bills could be billed timely. Additionally, Global's billing system was in order as of August 9, 1994, yet Global still did not send out all of the bills it had held. If it had, the majority of July calls and all of the August and September bills would have been billed timely.
The Commission stated that although Global's witnesses identified numerous reasons why some calls might not appear on a bill within 60 days from the time they were initiated, Global never proved any of these reasons actually caused Global to cease billing from May through September. The Commission similarly rejected Global's argument that its failure to bill within the limits imposed by the 60-day rule were caused by questions dealing with whether calls should be billed from wire centers or rate centers because Global still states it is not sure whether to use the wire center or the rate center to bill.
Finally, the Commission dismissed Global's argument that some other jurisdictions allow calls to be billed more than 60 days after the call was made as irrelevant. It went on to state that even if one were to look at practices in other jurisdictions, Global's argument would still fail. After Louisiana, Alabama provides Global with the next largest portion of its correctional facility operations. Alabama also has a 60-day rule. Georgia, another state in which Global operates, has a policy against billing for calls more than 2 months after they are made. Minnesota, a fourth state in which Global operates, also had a 60-day rule during the dates at issue.
For the reasons previously stated, the Commission denied Global's request for an exemption from the requirements of the 60-day rule. The Commission's findings are adequately supported by the record, and are therefore not arbitrary and capricious. The trial court was correct in affirming this portion of the Commission's Order.

E. Commission's Refund Order and Prohibition Against Collection for Calls Previously Billed in Violation of the Rule
Although we found the previously discussed orders of the Commission to be valid and not arbitrary and capricious, we reach a contrary conclusion on the more difficult issues regarding the Commission's orders to refund monies collected in violation of the 60-day rule and to refrain from billing in violation of the rule and collecting for those calls that Global billed in violation of the rule and are still unpaid. We will first examine the refund order.
The Commission argues the refund order is necessary to ensure its ability to enforce the 60-day rule and the trial court's disallowance of the refund inhibits the carrying out of its constitutional duties. The Commission cites various cases, both ratemaking and licensing, in support of its argument that it has the authority to order refunds in the instant situation.
While a refund order is an appropriate enforcement tool for the Commission to use under some circumstances, we find it inappropriate and outside the Commission's authority under the particular facts of this *37 case. In the refund cases cited by the Commission, and in those discovered through independent research, the monies subject to the refund orders were illegally earned because the utility was operating without a license or beyond the parameters set forth in its license, or charging unauthorized rates. For example, the Commission can validly order refunds in cases where the customer has been overcharged by a public utility. Louisiana Power & Light Co. v. Louisiana Public Service Com'n, 377 So.2d 1023 (La. 1979). See also Dixie Elec. Membership Coop. v. Louisiana Public Service Com'n, 509 So.2d 1002 (La.1987); Daily Advertiser v. Trans-La., a Div. of Atmos Energy Corp., 612 So.2d 7 (La.1993). While refunds are allowed in these ratemaking cases, their holdings are inapplicable to the instant situation as they deal with circumstances in which the Commission determined the customers had been overcharged. Other jurisdictions also allow refunds to be ordered when overcharges occur and when filing or licensure requirements are not met. See Southern Natural Gas Co. v. Federal Energy Regulatory Com'n, 813 F.2d 364 (11th Cir.1987) ("[F]or almost two years Southern had collected a greater amount of money than its tariff authorized." Id. at 366); Re: Pacifi-Corp Electric Operations, Docket No. ER92-110-001, 60 FERC p. 61,292 (FERC 1992) (Seller of transmission service failed to comply with the prior notice and filing requirement of the Federal Power Act which was intended to facilitate the Commission's responsibilities under the Act to ensure that all rates and charged for jurisdictional service are just and reasonable and not unduly discriminatory.); Re: International Telecharge, Inc., 95 P.U.R. 4th 421 (Kentucky Public Service Com'n 1988) ("ITI has collected rates that are unlawful and unreasonable. The Commission will not ratify this illegal and unjustifiable behavior." Id.).
In those cases, either because of the existence of charges in excess of authorized rates or a lack of authority to earn the revenues because of a licensing violation, refund of revenues was an appropriate remedy as those revenues had not been lawfully earned and therefore did not become the lawful property of the utility. Here, the utility was operating under a valid license and charging authorized rates. The revenues collected therefore became the legitimate property of the utility. South Central Bell Telephone Co. v. Louisiana Public Service Com'n, 594 So.2d 357 (La.1992). Once these revenues became the property of the utility, a refund order could not be utilized to retroactively divest Global of revenues it legally earned as this would be analogous to prohibited retroactive ratemaking.[6]See id. Therefore, this refund order by the Commission is at best arbitrary and capricious and outside of its authority.
Likewise, for the same reasons, the Commission's orders that prohibit Global from billing in violation of the 60-day rule and from attempting to collect for calls already billed in violation of the rule are arbitrary and capricious and beyond its authority. Although the 60-day rule, as a temporal limitation on Global's billing, is a valid exercise of the Commission's reasonable regulatory authority over public utilities, the Commission's chosen remedy for the violation of that rule, that Global not collect revenues legally earned but not billed within 60 days, has the same effect as the previously discussed prohibited refund order. This is because it prevents Global from obtaining its legally earned revenues. As such, it was arbitrary and capricious for the Commission to issue these orders. The trial court's ruling to the contrary is therefore reversed.
The Commission is not without remedy in a case such as this even in the absence of the ability to order a refund of legally earned revenues. It retains the authority to suspend or even revoke the operating license of those offenders who fail to comply with the reasonable and lawful rules of the Commission.

CONCLUSION
We hold the Commission did not abuse its authority in enacting the rule that COCOTs *38 must submit bills to their customers within 60 days from the date the call was initiated nor did it act arbitrarily and capriciously in denying Global's request for a waiver from this rule. We conclude, however, the Commission acted arbitrarily and capriciously when it ordered that Global not bill in violation of the rule or collect for calls already billed in violation of the rule and that Global refund all sums collected in violation of the 60-day rule. Therefore, the trial court's judgment is affirmed in part and reversed in part.
AFFIRMED IN PART AND REVERSED IN PART.
JOHNSON and LEMMON, JJ., dissent in part and assign reasons.
JOHNSON, Justice, dissenting.
This is a direct appeal from the 19th Judicial District Court pursuant to La. Const. Art. IV, § 21(E). I dissent in part because I am of the opinion that the Louisiana Public Service Commission (Commission) does have the authority to order a refund of money collected in violation of the 60 day rule[1]. The majority has determined in this case that the Commission acted arbitrarily and capriciously when it ordered that Global Tel*Link, Inc. refund all sums collected in violation of the 60 day rule. I disagree. The Commission has the authority to demand a refund of sums illegally billed.
Global Tel*Link, Inc., in the course of providing services to Louisiana customers, has been found guilty of overcharging its customers in several areas including: clock advancements, rates exceeding authorized levels, addition of charges to calls after the calls were rated, addition of time to completed calls and duplicate billings. The 60 day rule was promulgated by the Commission to protect consumers because they realize that after an extended period of time consumers cannot remember the details of telephone calls. The customer is at a clear disadvantage in determining errors on a stale telephone bill.
Global Tel*Link, Inc. decided to upgrade its billing system so that all calls would be billed from its Alabama facility. The new billing system was fully functional as of August 9, 1994. Therefore, most of the billing at issue here could have been billed within the 60 day period.
This ordered refund is not a forfeiture or confiscation of property. The Commission's 60 day rule is not a new requirement. It has been in existence for seven years and is a long-standing requirement. The 60 day rule is not unreasonable and facilitates the needs of customers to have adequate time to review their bills. The Commission must have some mechanism to ensure enforcement of its orders. I would hold that the Commission has the authority to order a refund of sums collected in violation of the 60 day rule.
LEMMON, Justice, dissenting.
La. Const. IV, § 21(B) gives the Public Service Commission (PSC) the power to "adopt and enforce reasonable rules" pertaining to the regulation of the public utilities. The majority recognizes that the PSC's adoption of the sixty-day rule was a reasonable regulation of a public utility, but refuses to recognize the PSC's authority to enforce the rule by prohibiting collection of charges billed in violation of the rule. Such charges are as "illegal" as charges billed in violation of existing tariffs, and the PSC's refusal to allow collection (or retention) of these charges was an appropriate means of enforcing the reasonable rule.
NOTES
[*] VICTORY, J., not on panel. See Rule IV, Part 2, Section 3.
[1] Schlumberger Technologies Ltd. purchased Global from its previous owners on April 1, 1993.
[2] For example, if a call lasts one minute and fifty-five seconds and the clock is properly set to begin at 0 seconds, that call will be rounded up and billed as a two minute call. If, however, that call was made on a Global telephone with a 15 second clock advancement, the call would be clocked at two minutes and ten seconds. Once rounded, that call would be billed as a three minute call rather than a two minute call.
[3] Note that these charges were added on to a charge that may have already been inflated by clock advancements and/or incorrect rates.
[4] This vote resulted in the issuance of Order No. U-20784-C wherein it was ordered that Global's request for an exemption from the 60-day rule was denied, that Global could not bill or collect in violation of the rule, and that Global must refund all monies collected in violation of the rule. The Commission summarized its reasons for Order No. U-20784-C in its Conclusion, which stated:

Global has failed to demonstrate that it is entitled to an exemption from the 60-day Rule. It chose not to bill these calls and even after it claims that problems were corrected and could have begun billing them in August, 1994, for some inexplicable reason, it chose not to do so. Other COCOTs operating in Louisiana have no problem abiding by the rule and such a requirement is the rule rather than the exception in other jurisdictions. Global has also provided no justification for the calls which it actually billed more than 60 days after they were made. These billings violated a long-standing Commission Order as well as Global's contract with the Department of Corrections.
[5] La. Const. Art. IV, § 21(E) states:

(E) Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.
[6] Although we note this is not a ratemaking case, we nevertheless find that the refund order is analogous to retroactive ratemaking as it retroactively reduces the rate under which Global was authorized to operate.
[1] Bills must be submitted to customers within 60 days from the date the call was initiated.