CONSUMERS POWER COMPANY v ASSOCIATION OF
BUSINESSES ADVOCATING TARIFF EQUITY

Docket No. 139077. Submitted October 6, 1993, at Detroit. Decided
June 7, 1994, at 9:30 A.M. Leave to appeal sought.

Consumers Power Company filed an application with the Public
Service Commission, seeking rate surcharges to recover permis-
sible costs associated with agreements it had entered into with
the Department of Social Services for energy assistance pro-
grams pursuant to 1989 PA 200. The Association of Businesses
Advocating Tariff Equity (ABATE) intervened. The parties en-
tered into a settlement whereby Consumers could impose rea-
sonable surcharges for its costs associated with the energy
assistance programs, but reserving ABATE's right to dispute the
constitutionality of the surcharge. ABATE pursued the constitu-
tional challenge before the commission, which held that it
could not resolve constitutional issues, found that it was re-
quired to follow the statute authorizing a surcharge and that it
had authority independent of 1989 PA 200 to permit recovery
of the costs of the energy assistance programs, denied ABATE's
motion to dismiss, and approved the settlement. ABATE ap-
pealed.

The Court of Appeals *held:*

1. The commission has authority independent of 1989 PA
200, an appropriations act, to approve a rate surcharge to
recover reasonable costs associated with energy assistance pro-
grams.

2. The commission properly recognized that it does not have
the power to determine constitutional questions. However,
because no further factual development is necessary, the consti-
tutional questions can be considered in this appeal.

3. A surcharge to cover the costs of the energy assistance
programs is not a tax. Thus, the surcharges at issue here are
not subject to the provisions of the Headlee Amendment, Const
1963, art 9, §§ 25 and 26.

4. Although the title of 1989 PA 200 does not mention energy

REFERENCES

Am Jur 2d, Public Utilities § 232.
See ALR Index under Utilities.

assistance programs, those programs fall within the scope of language of the title of the act providing that the act is related to social welfare services. Accordingly, there is no violation of the Title-Object Clause, Const 1963, art 4, § 24.

5. There was no unconstitutional delegation of power to private utility companies to implement a government program. 1989 PA 200 authorizes the DSS to enter into energy assistance programs as it sees appropriate; thus, the power to implement the programs remains with a governmental agency.

6. Although 1989 PA 200 provided a means by which participants in the energy assistance programs received rate assistance, the resulting rate relief did not amount to a discriminatory rate structure, and the rate surcharges allowed by the commission were consistent with its authority to permit utilities to recover their reasonable costs.

Affirmed.

PUBLIC UTILITIES — ENERGY ASSISTANCE PROGRAMS — CONSTITU-
TIONAL LAW.

There is no constitutional prohibition to the Public Service Commission authorizing rate surcharges to utility companies for the purpose of recovering the reasonable costs associated with the implementation of energy assistance programs entered into with the Department of Social Services pursuant to 1989 PA 200.

*William E. Wisner* and *Jon R. Robinson,* for Consumers Power Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Don L. Keskey,* and *Henry J. Boynton,* Assistant Attorneys General, for the Public Service Commission.

*Hill Lewis* (by *Robert A. W. Strong* and *Charles G. Goedert*), for Association of Businesses Advocating Tariff Equity.

Before: HOLBROOK, JR., P.J., and MacKENZIE and R. L. TAHVONEN,* JJ.

PER CURIAM. The Association of Businesses Ad-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

vocating Tariff Equity (ABATE) appeals as of right a February 22, 1991, decision of the Michigan Public Service Commission (PSC) in PSC Docket No. U-9556 approving a settlement agreement regarding surcharges to be imposed on virtually all ratepayers and denying ABATE's motion to dismiss. We affirm.

This matter concerns costs related to Energy Assistance Programs (EAPs) designed to help poor persons who are recipients of services provided by the Department of Social Services (DSS). Under one part of an EAP, the DSS makes direct payments on a portion of a DSS recipient's utility bill to the utility provider.

1989 PA 200 is the general appropriations act for welfare services administered by the DSS for the fiscal year ending September 30, 1990. The act appropriated over $4.7 billion and covered a multitude of expenditures. One of the expenditures was a specific appropriation for a low income energy assistance program.

Sections 801 through 817 of the act covered aid to families with dependent children (AFDC). While some of these sections governed rent vendoring programs and special needs allowances, several sections were devoted to energy programs. Section 810 permitted the DSS to enter into agreements with energy providers that would authorize the DSS to make direct payments to the energy provider on behalf of general assistance recipients and AFDC recipients. Section 814 was particularly relevant and provided in relevant part:

> A provider utility shall be entitled to recover in its rates all qualifying costs incurred pursuant to an agreement between the provider utility and the department for the payment of all or part of assisted households' heating and electric service bills and for costs incurred for energy conservation

programs as prescribed in section 810(k). Qualifying costs shall include amounts forgiven for assisted households, prudently incurred energy conservation program costs, the conservation incentive credits and the cost of capital incurred for preenrollment arrearages and energy conservation programs for program years October 1, 1989 through September 30, 1991. . . . All such qualifying costs incurred for program years beginning after October 1, 1989 and ending September 30, 1991 shall be subject to deferred accounting and recovery through a general rate case application or shall be subject to timely recovery through separate limited purpose rate proceedings.

Consumers Power Company voluntarily entered EAPs pursuant to § 810 of 1989 PA 200. Under § 814 of the act, Consumers filed an application with the PSC on December 26, 1989, to implement surcharges in order to recover permissible costs under the agreements it had with the DSS. ABATE intervened. After the testimony of several witnesses and a prehearing conference, the parties reached a settlement agreement. The agreement set forth the amounts Consumers could charge as reasonable surcharges for its costs incurred under 1989 PA 200. The settlement agreement also reserved ABATE's right to dispute the constitutionality of the surcharges. ABATE pursued its constitutional challenge before the PSC. In its February 22, 1991, decision, the PSC found that the settlement was reasonable and that the surcharges were reasonable rates. The PSC found that it could not resolve constitutional issues and that it was required to follow the statute authorizing a surcharge. The PSC also found that it had authority independent of 1989 PA 200 to permit recovery of EAP costs. The PSC thus denied ABATE's motion to dismiss and approved the settlement agreement.

We first discuss the procedural issues raised by

Consumers and the PSC. We agree with the PSC that it had authority independent of 1989 PA 200 to approve the requested rate surcharges under MCL 460.6; MSA 22.13(6), and MCL 460.54; MSA 22.4. We find that the reasonably incurred uncollectible expenses are expenses the PSC can consider in determining and establishing reasonable rates. See *Detroit Edison Co v Public Service Comm,* 127 Mich App 499, 524; 342 NW2d 273 (1983), citing *Michigan Bell Telephone Co v Public Service Comm,* 332 Mich 7; 50 NW2d 826 (1952).

We also find that the PSC properly recognized that it does not have the power to determine constitutional questions or to hold statutes unconstitutional. *Wikman v Novi,* 413 Mich 617, 646-647; 322 NW2d 103 (1982), citing *Dation v Ford Motor Co,* 314 Mich 152; 22 NW2d 252 (1946). However, we decide to consider the constitutional issues raised by ABATE. *Dation, supra* at 161. ABATE preserved the issues to the extent possible. Additional factual development is not required, and there is no dispute about any material fact. We are not persuaded by Consumers' and the PSC's argument that ABATE was required to raise the constitutional challenges in circuit court before raising them in this Court. MCL 24.264; MSA 3.560(164) is part of the Administrative Procedures Act and is inapplicable because it applies to the constitutionality of an administrative rule. Here ABATE challenges a statute. Moreover, MCL 24.264; MSA 3.560(164) provides only that the validity of a rule *may* be determined in an action for a declaratory judgment. The statute specifically states that the section does not prohibit the determination of the validity of a rule in any other action or proceedings in which the rule's validity is asserted. A declaratory action would have only resulted in a duplicity of actions. Although ABATE does not at-

tempt to show that the PSC's rate decision was unreasonable, ABATE's constitutional challenges question whether the PSC's order is lawful. MCL 462.26(8); MSA 22.45(8). Thus, addressing ABATE's constitutional issues is appropriate.

ABATE contends that § 814 of the act imposes a tax by permitting recovery of qualifying costs by charging ratepayers. ABATE claims that this tax violates the Headlee Amendment, Const 1963, art 9, §§ 25 and 26, because it represents a tax that has not been voted upon. We disagree. The surcharges were intended to benefit utilities that participate in EAPs. They were not imposed for the benefit of the public in general. See *Bray v Dep't of State,* 418 Mich 149, 162; 341 NW2d 92 (1983); *Dukesherer Farms, Inc v Dep't of Agriculture (After Remand),* 405 Mich 1, 16; 273 NW2d 877 (1979). Instead, the surcharges inured to the benefit either of welfare utility users or of utility providers. The surcharges were not a mandatory revenue raiser, because a utility provider and the DSS first had to enter voluntarily into EAP agreements. Because the surcharges were not taxes, they did not violate the Headlee Amendment. Moreover, the act does not violate Const 1963, art 4, § 32, because the act does not impose a tax.

We further find no merit in ABATE's argument that the act violates the title-object provision of the Michigan Constitution. The Title-Object Clause, Const 1963, art 4, § 24, provides:

No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title.

The purpose of the Title-Object Clause is to

prevent the Legislature from passing laws not fully understood and to avoid bringing into one bill subjects diverse in their nature and having no necessary connection. *Ace Tex Corp v Detroit,* 185 Mich App 609, 615; 463 NW2d 166 (1990). Its goal is notice, not restriction, of legislation, and the Title-Object Clause is only violated where the subjects are so diverse in nature that they have no necessary connection. *Id.; Petrus v Dickinson Co Bd of Comm'rs,* 184 Mich App 282, 296; 457 NW2d 359 (1990).

The title of 1989 PA 200 states:

> AN ACT to make appropriations for the department of social services and certain state purposes related to public welfare services for the fiscal year ending September 30, 1990; to provide for the expenditure of the appropriations; to create funds; to provide for the imposition of fees; to provide for reports; to provide for the disposition of fees and other income received by the state agency; to provide for the powers and duties of certain state departments, agencies, and officers; and to repeal certain acts and parts of acts.

Although the title of the act does not say anything about EAPS or surcharges in utility rates, the EAPS are clearly "related to public welfare services." The general object of the act is the appropriation of funds and control of expenditures for welfare. All of the matters contained in the act are germane to its object, and the provisions directly relate to, carry out, or implement the principal object. *Livonia v Dep't of Social Services,* 423 Mich 466, 497-499; 378 NW2d 402 (1975). It is quite possible to construe the act as constitutional. *Dukesherer Farms, Inc, supra* at 29.

ABATE next argues that the act unconstitutionally delegated to utilities the power to decide

whether to implement a governmental program and whether to tax ratepayers accordingly. ABATE further argues that the act unconstitutionally delegated to private entities the power to provide an EAP to DSS recipients, to provide for conservation services, and to distribute the costs of such programs among all ratepayers through a tax regardless of use by the ratepayers of the services provided.

We reject ABATE's contentions for two reasons. First, the act authorized the DSS, and not the utilities, to participate in EAPs. Because § 810 states that the DSS shall enter into agreements "as it determines is appropriate," the DSS was not required to enter into EAPs with utility providers, and utilities could not force the DSS to enter into EAPS. To the extent the Legislature has delegated some of its authority to the DSS, the delegation was pursuant to fairly strict guidelines, see e.g., § 810(a)-(n), that were as reasonably precise as the subject matter requires. *Dep't of Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976). Second, the surcharges were not a tax. Hence, the act did not delegate impermissibly the legislative power to tax to private entities.

Finally, ABATE argues that the act created subsidized utility rates for certain persons, thereby forcing the PSC to approve discriminatory rates without an express grant of authority to do so. However, the Legislature expressly recognized that the PSC could permit utilities to recover certain costs incurred in EAPs. Therefore, the act plainly granted the PSC the authority to do what it did in the instant case. *Mason Co Civic Research Counsel v Mason Co,* 343 Mich 313, 326-327; 72 NW2d 292 (1955); *Taylor v Michigan Public Utilities Comm,* 217 Mich 400, 402-403; 186 NW 485 (1922). Fur-

ther, the act did not create discriminatory utility rates, because the only discrimination among low income ratepayers was based upon whether they participated in EAPS. The PSC has nothing to do with whether ratepayers or utility providers participate in such programs. We conclude that none of ABATE's contentions require the reversal of the PSC's order.

Affirmed.