943 So.2d 349 (2006)
VOICESTREAM GSM I OPERATING CO., LLC and Cook Inlet/VS GSM IV PSC, LLC
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
Nos. 2005-CA-2578, 2005-CA-2579.
Supreme Court of Louisiana.
November 29, 2006.
*351 Brian A. Eddington, Baton Rouge, for Appellant.
Eve K. Gonzalez, Brandon M. Frey, Ann B. Hill, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward H. Bergin, Ryan E. Johnson, Baton Rouge, Shirley, Ezell, Guarisco & Marionneaux, Paul G. Guarisco, New Orleans, Kyle C. Marionneaux, Baton Rouge, The Boles Law Firm, Janet S. Boles, Baton Rouge, for Appellee.
JOHNSON, Justice.
We granted this writ application to address whether a fee imposed by a general order of the Louisiana Public Service Commission requiring telecommunications service providers to contribute to a state universal service fund constitutes a tax and therefore exceeds the scope of the Louisiana Public Service Commission's constitutional authority and jurisdiction. The Plaintiffs, Voicestream GSM I Operating Co., LLC and Cook Inlet/VS GSM IV PSC, LLC, also known as "T-Mobile," filed a direct appeal to review the lower court's decision, which declared that the state universal service fee was not a tax, and therefore within the Commission's authority and jurisdiction granted by the Louisiana Constitution and the Federal Telecommunications Act of 1996. For the foregoing reasons, we affirm the rulings of the lower court.

FACTS AND PROCEDURAL HISTORY
Voicestream GSM I Operating Co., LLC and Cook Inlet/VS GSM IV PSC, LLC work together in the State of Louisiana to provide inter alia wireless telecommunications services. The companies jointly conduct business under the more widely known corporate name "T-Mobile." T-Mobile, an independent commercial mobile radio service ("CMRS"), generally referred to as "cellular" service, provides wireless voice and data services to numerous consumers in many states, including Louisiana. In the present case, T-Mobile sought judicial review of the Louisiana Public Service Commission's ("LPSC") General Order, dated April 29, 2005, which established a funding for a State Universal Service Fund ("SUSF") in the amount of $42,2274,141.00, to be funded by all the telecommunications service providers ("TSP")[1], including wireless carriers (i.e., T-Mobile) that are operating within the state of Louisiana.
When Congress established the Federal Communications Commission in 1934, it set forth the intent to create a universal service which would provide every person in the United States access to "rapid, efficient, nation-wide and world-wide wire and radio communication service with adequate *352 facilities at reasonable charges." 47 U.S.C. § 151.[2]
The LPSC is an executive branch of the State of Louisiana with constitutional authority to regulate communication services pursuant to LSA  Const. art. IV, § 21(B), which provides:
(B) Powers and Duties. The Commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
Historically, the LPSC has been challenged to achieve and maintain a universal service. Because there are fewer customers per mile, larger geographic service areas, and limited demand, the resulting low profitability discouraged companies from providing service to rural customers. To ensure affordable telecommunications services to rural and higher cost areas of the state, in 1989, the LPSC, in their effort "to modernize rural telephone service, to facilitate the flow of information in these areas, and reduce the inequities that result from the application of tolls to intrastate telephone calls of short distances"  stabilize the rates, concluded that the public interest warranted statewide implementation of a "Local Option Service" ("LOS").[3] Under the LOS plan, subscribers statewide could take advantage of extended local calling for calls that previously were billed as toll calls. Telephone subscribers would pay, in addition to their monthly phone bill, a flat rate for calls made outside the local calling area, but within twenty-two (22) to forty (40) miles without incurring "toll" charges. The LPSC found that "the implementation of LOS was to be a major step in making such calls more `local' in nature." While the LPSC mandated the implementation of the LOS plan statewide, the LPSC recognized that the rural companies' revenues and earnings would be adversely impacted by this plan. Therefore, the LPSC required South Central Bell (now "BellSouth") to subsidize the costs associated with implementing the LOS plan, which eliminated the financial burden on the rural Independent Local Exchange Carriers (ILEC).
On April 25, 1996, the LPSC ordered the ILECs to implement a new form of intrastate long distance calling, "1+ presubscription" for the intraLATA toll call in *353 Louisiana.[4] The implementation of this plan terminated BellSouth's funding of the LOS plan for the benefit of local/rural telephone companies. Absent further actions by the LPSC, this plan would have caused the rural companies to continue to offer the LOS calling plans at revenue loss and without the receipt of the needed subsidy. As a result, the rural companies filed a petition asking the LPSC to establish a SUSF to preserve the LOS calling plan. Cognizant of the potential financial burden for the local rural telephone companies, the LPSC, BellSouth, and the local telephone companies reached a Settlement Agreement on November 18, 1998, which insured that both plans (LOS and "1 + presubscription") would be maintained.
The 1998 Agreement was known as the "Interim LOS Preservation Plan."[5] This Settlement Agreement excluded cellular providers, Competitive Local Exchange Carriers and independent companies from the requirement of contributing to the Interim LOS Preservation Plan. BellSouth was the primary contributor of the funds for this interim plan. The interim plan was designed to remain in effect for only three (3) years; BellSouth filed a Motion with the LPSC requesting that it replace the Interim LOS Preservation Plan with a permanent fund supported by all TSPs. This would carry out the mandate of the Telecommunications Act which was enacted by Congress in 1996.
The Telecommunications Act of 1996 ("the Act"), allowed states to establish universal service funds to advance the availability of telecommunications services in low income, rural, and high cost areas at reasonable rates comparable to the rates charged for similar services in urban areas. See, 47 U.S.C. § 254(b)(3).[6] The specific purpose of the Act is to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub.L. No. 104-104, 110 Stat. 56 (1996).[7] Under the Act, the incumbent local exchange carriers ("ILEC") are required to provide access to their facilities to requesting telecommunications carriers, known as "competitive local exchange carriers." 47 U.S.C. § 251. According to 47 U.S.C. § 253, the Act was created to foster competition by removing barriers to entry by an entity seeking to provide interstate or intrastate telecommunications service.[8] While seeking to promote competitive markets, Congress also sought to preserve the *354 goal of "universal service," therefore, Congress directed the Federal Communications Commission ("FCC") to establish a federal-state joint board to assist in implementing the universal service principles found in the Act. Simply put, the Act was intended to deregulate the telecommunications industry, open local and long distance telecommunications markets to competition, and ensure universal telephone service for all citizens at affordable rates.
Accordingly, Congress explicitly authorized the collection of funds to support universal service programs. AT & T Corp., et al. v. Public Utility Commission of Texas, 373 F.3d 641, 643 (5th Cir.2004). All interstate telecommunications service providers contribute to the federal universal service fund, which is an equitable and nondiscriminatory fee paid to preserve and advance the universal service. 47 U.S.C. § 254(d).[9] Congress empowered the States to collect funds from carriers providing intrastate telecommunications services. AT & T, id. As with the federal universal service fund, the assessment of state universal funds must be equitable, nondiscriminatory, and not burdensome to the federal universal service system. 47 U.S.C. § 254(f).[10] In other words, the State may adopt regulations consistent with the Federal rules to preserve and advance universal service. This permits the FCC to access interstate service providers to fund the federal universal service programs and permits the States to assess intrastate providers to fund the state universal service programs. AT & T, at 644.
In August 2004, the LPSC began taking the necessary procedural steps (i.e., the rulemaking process) in order to implement the Telecommunications Act of 1996 and consider the creation of a SUSF. The universal fund would assume the function(s) of the "Interim LOS Preservation Plan," but for the first time required contributions from all TSP (including wireless carriers).
On April 29, 2005, the LPSC issued a General Order which converted the "Interim LOS Preservation Plan," to a SUSF to subsidize the LOS functions. The validity of this Order is at issue in this present case before this Court. This Order mandated that all TSPs, including wireless carriers such as T-Mobile, contribute to the SUSF. This Order also provided that each TSP be allowed to recover the amounts *355 contributed from its customers (i.e. "end users") either by a surcharge (i.e. a line item charge on the customer's bill) or by including the contribution in the rates the carrier charges its customer.[11] Also, the TSPs were allowed to recover additional administrative costs for collecting and remitting to SUSF. The contributions, which were to be administered by a third party, were based on the intrastate telecommunications end-user revenues from providing service in Louisiana. This third party administrator would distribute the funds to local rural telephone companies. BellSouth's financial obligation was decreased upon the enactment of this plan because all TSPs contributed to the fund. Although T-Mobile was not required to contribute to the Interim LOS Preservation Plan, the April 29, 2005, General Order mandates that all TSP, including wireless carriers, contribute.
On June 7, 2005, T-Mobile filed a Petition for Declaratory Judgment and Injunctive Relief, pursuant to LSA-R.S. 49:963,[12] seeking to enjoin the enforcement of the LPSC's General Order of April 29, 2005. T-Mobile argued that the Order "constitutes the imposition of a tax in violation of constitutional and statutory provisions and in excess of the Commission's jurisdiction" pursuant to the provisions of LSA-Const. art. IV, § 21 and art. VII, § 1.[13] T-Mobile argued that the contributions collected would go to neither the LPSC nor any other entity associated with the regulatory system. T-Mobile maintained that the contribution "is not intended to defray any costs incurred in the administration of any regulatory program," instead will be distributed to private businesses for sole purpose of subsidizing the costs of rural telecommunications carriers, which constitutes an illegal imposition of a tax.
On June 27, 2005, BellSouth, whose funding obligations will be significantly reduced on the implementation of the SUSF, intervened in the action and also opposed *356 T-Mobile's application for preliminary injunction. BellSouth maintained that the SUSF is an exercise of the LPSC's regulatory authority and is not a tax. Because the LPSC's April 29, 2005, General Order did not impose a tax, it is therefore not an unconstitutional exercise of taxing authority.[14]
The Small Company Committee ("SCC") of the Louisiana Telecommunications Association and several rural telephone companies (collectively "LTA") also filed a petition of intervention and answer, opposing T-Mobile's position. They asserted that they are the only providers of "ubiquitous, land-line, high-quality, facilities-based service throughout their respective areas" and if they lose the ability to continue investing in their networks, some rural Louisiana areas may be deprived of the basic universal service where such high-quality land-line services are available at affordable rates. The LTA noted that this outcome would be at odds with the universal service principles codified by Congress in the 1996 Telecommunications Act, and the LPSC's regulations and policies. The LTA also claimed that the LPSC's Order was properly adopted pursuant to its regulatory and rulemaking authority under LSA-Const. art. IV, § 21.
On June 30, 2005, the LPSC filed an Exception of No Cause of Action, arguing that T-Mobile procedurally failed to appeal the LPSC's action according to LSA-R.S. 45:1192,[15] but instead requested a declaratory judgment under LSA-R.S. 49:963, a statute which is contained in the Louisiana Administrative Procedure Act ("LAPA") and which sets out administrative procedures for agencies other than the Commission. See, La. Consumers' League v. LPSC, 351 So.2d 128 (La.1977).
On August 24, 2005, the trial court denied T-Mobile's request for a preliminary injunction and/or a stay of the LPSC's General Order of April 29, 2005, finding that the contribution imposed by the Commission in its General Order dated April 29, 2005, is not a tax, and is within the Commission's authority and jurisdiction." The trial court also found that the establishment of the SUSF is an exercise of the LPSC's rate making authority granted by the Louisiana Constitution and the Telecommunications Act of 1996. The trial court noted that according to LSA-C.C.Pr. art. 3601, a preliminary injunction is warranted when the party proves: 1) the likelihood to prevail on the merits; 2) irreparable injury; and 3) the entitlement of relief sought. Here, the trial court acknowledged that this case hinges on whether or not the assessment of the SUSF constitutes a tax. The trial court held that the evidence, law, and jurisprudence support its findings that the subsidy assessment does not constitute a tax. After analyzing Audubon Insurance Co. v. Bernard, 434 So.2d 1072 (La.1983) and Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94); 630 So.2d 694, the trial court determined that the assessment was not a tax imposed for general revenue raising, *357 but a regulatory fee authorized according to the LPSC's police power to assure the availability of universal service at a reasonable rate. The trial court held, according to Citizens' Utility Ratepayer Bd. v. State Corporation Comm'n, 264 Kan. 363, 956 P.2d 685 (1998), which the trial court describes as being the "most compelling case" similar to the case at bar, that:
the assessment, or surcharge in that case, as with the assessment in the case sub judice, was not to raise revenue, but rather, to assure universally available service at a reasonable rate. That doesn't meet the jurisprudential definition of a tax. Also, in both cases, the money collected was not offered to the general public for expenditure at its discretion. Clearly, the use of the assessment is the allocation of costs for the administration of a regulatory program which has its origins back to 1989. . . .
The trial court cited LSA-Const. art. VII, § 3(A),[16] which prohibits the issuance of injunctive relief to restrain the collection of a tax. The trial court denied T-Mobile's preliminary injunction and the request for a stay of the enforcement of this order.
On September 19, 2005, the trial court ruled on T-Mobile's and the LPSC's cross-motions for partial summary judgment,[17] and for the reasons given on August 24, 2005, determined that the required contributions to the SUSF constituted fees, and not taxes. The trial court also denied T-Mobile's request for a temporary restraining order.[18]
On September 21, 2005, T-Mobile filed a Consolidated Motion and Order for Appeal, requesting that the following judgments be consolidated for appeal: 1) the denial of T-Mobile's preliminary injunction; 2) the denial of T-Mobile's Motion for Partial Summary Judgment; and 3) the denial of T-Mobile's TRO. The trial court granted this motion. On that same day, T-Mobile filed an Exparte Motion for Partial Dismissal of the Gautreau Group, LLC, which was granted.
T-Mobile filed a direct appeal with this Court pursuant to LSA-Const. art. IV § 21(E).[19]

*358 DISCUSSION

Standard of Review
Before addressing whether the trial court erred in denying T-Mobile's preliminary injunction, issuance of a temporary restraining order, or motion for partial summary judgment,[20] we note that this matter involves a challenge of the LPSC's Order, requiring all telecommunications service providers, including wireless carriers, contribute to a State Universal Service Fund ("SUSF"). The LPSC is vested explicitly and implicitly with constitutional power necessary to the performance of its function of regulating common carriers and public utilities through the adoption and enforcement of reasonable rules, regulations, and procedures requisite to those purposes. See, LSA-Const. art. IV, § 21; Bowie v. LPSC, 627 So.2d 164 (La.1993). The Louisiana Constitution grants the LPSC plenary authority over the regulation of all public utilities thereby providing a broad and independent power and authority to regulate. Entergy Gulf States, Inc. v. LPSC, 98-0881 (La.1/20/99), 726 So.2d 870.
In reviewing T-Mobile's challenge of the LPSC's Order, this Court stated it best in Alma Plantation v. LPSC, 96-1423 (La.1/14/97), 685 So.2d 107, when it stated that:
The general rule is that an order of the Public Service Commission should not be overturned unless it is shown to be arbitrary, capricious, a clear abuse of authority, or not reasonably based upon the factual evidence presented. Washington St. Tammany Electrical Coop., Inc. v. Louisiana Public Service Comm'n, 95-1932 (La.4/8/96), 671 So.2d 908, 912; Radiofone, Inc. v. Louisiana Public Service Comm'n, 573 So.2d 460, 461 (La.1991). The function of the reviewing court is not to re-evaluate and re-weigh the evidence, or to substitute its judgment for that of the Commission. Washington St. Tammany, supra, at 912; Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 343 So.2d 1040, 1044 (La.1977). The Commission is entitled to deference in its interpretation of its own rules and regulations, though not in its interpretation of statutes and judicial decisions. Washington St. Tammany, supra, at 912; Dixie Electric Membership Corp. v. Louisiana Public Service Comm'n, 441 So.2d 1208, 1211 (La.1983).
(Emphasis added).
This Court held that the LPSC is "an expert within its own specialized field and its interpretation and application of its own General Orders, as distinguished from legislative statutes and judicial decisions, deserve great weight, because the Commission is in the best position to apply its own General Orders." Entergy Gulf States, Inc. v. Louisiana Public Service Com'n, (La.2000) 766 So.2d 521. This Court has also held that the LPSC's orders enjoy a presumption of validity. Transway, Inc. v. LPSC, 253 La. 933, 221 So.2d 53, 55 (La.1969). The LPSC's power is as complete in every respect as the regulatory power that would have been vested in the legislature in the absence of LSA-Const. art. IV § 21(B). Therefore, the legislature's acts or omissions can not subtract from the LPCS's exclusive, plenary power to regulate all common carriers and public utilities. See, Global Tel*Link, Inc. v. Louisiana Public Service Com'n, 97-CA-0645 (La.1/21/98), 707 So.2d 28.
*359 Now, we must address the primary issue presented before this Court  whether the trial court erred in finding that the LPSC's General Order dated April 29, 2005, levied a "fee" arising under the Commission's general ratemaking jurisdiction provided in the LSA-Const. art. IV, § 21 rather than a tax in contravention of LSA-art. VII, § 2. Simply stated, we must address whether the SUSF is a tax or a regulatory fee within the authority of the LPSC.
Is the SUSF a Tax?
T-Mobile suggests that the LPSC's General Order of April 29, 2005, purportedly levied a "tax," as opposed to a "fee," against all TSPs. T-Mobile argues that the required contributions are not "fees" necessary for the regulation of the TSPs, but rather, T-Mobile suggests that these contributions are unconstitutionally levied "taxes" intended to raise revenue for the subsidization of local telephone companies. Also, T-Mobile argues that these "fees" do not go toward the "defrayal of the costs of administration of a regulatory program," but instead, the "fees" are given to a third party for disbursement to rural phone companies.[21]
This Court delineated the difference between a "fee" and a "tax" in Audubon, supra,[22] wherein the Court stated:
It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax.
Id. at 1074.
This Court reiterated in Safety Net For Abused Persons v. Segura,[23] 96-1978 (La.4/8/97), 692 So.2d 1038, that a fee is a regulation of public order whereas a tax's primary purpose is to raise revenue.
The courts in other jurisdictions that have considered this issue have consistently held that charges imposed to reallocate costs between utilities or telecommunications *360 companies are not taxes. Rather, these courts have consistently held the charges are regulatory fees designed to implement a regulatory program. In Schumacher v. Johanns, 272 Neb. 346, 722 N.W.2d 37, the Nebraska Supreme Court held that the Nebraska Telecommunications Universal Service Fund Act ("NTUSFA") is a constitutional delegation of legislative authority to the Public Service Commission ("PSC"). In that case, Nebraska subscribers, who received telecommunications services and was charged a fee of 6.95 percent of their intrastate telephone service revenues, sought a declaratory judgment that the NTUSFA was unconstitutional and also sought to enjoin the continued implementation and enforcement of said fund. The Nebraska District Court denied the subscribers' relief, holding that:
the surcharge imposed under the NTUSFA was not a tax because "it is not a forced contribution intended to raise revenue for the maintenance of government or governmental services offered to the general public," but, rather, is a "regulatory measure" designed to replace revenues lost by telecommunications providers "as a result of the removal of implicit support previously contained in their rates and access charges" with explicit support authorized by the NTUSFA.
The Nebraska Supreme Court affirmed the district court's ruling and held that:
we conclude that the primary purpose of the NTUSFA is not to generate revenue for governmental purposes, but, rather, to regulate the telecommunications industry through a rebalancing and restructuring of rates. The funding mechanism established by the NTUSFA enables the replacement of implicit subsidies with explicit subsidies in order to achieve universal service under the new, competitive market environment brought about by the Telecommunications Act. The NTUSFA directs that "[t]he implicit support mechanisms in intrastate access rates throughout the state may be replaced while ensuring that local service rates in all areas of the state remain affordable. . . ." The surcharge is imposed only on end-user revenues from telecommunications services, and payments from the Fund are made only to eligible telecommunications companies for the sole purpose of "provision, maintenance, and upgrading of facilities and services for which the support is intended." Based upon our independent review, we conclude that the surcharge assessed by the PSC pursuant to the NTUSFA is not a tax.
In Citizens, supra., the Kansas Supreme Court addressed this same issue after Kansas enacted legislation in response to the Telecommunications Act of 1996. In that case, the Kansas legislation established a Universal Service Fund ("USF") and authorized the Kansas Corporation Commission ("KCC") to assess all telecommunications carriers, public utilities, and wireless service providers a surcharge for support of the fund. The act also authorized the providers to collect from their customers an amount equal to the required contributions to the fund. Pursuant to these mandates, the KCC required all intrastate telecommunications providers to pay into the fund 14.1 percent of their intrastate retail revenues. The KCC then authorized the providers to pass this assessment through to their customers over a 3-year period, with the highest charge being $3.21 per month. A provider challenged the assessment, arguing that it was a tax which the KCC lacked constitutional authority to impose.
The Kansas court disagreed, reasoning that the surcharge was not a tax because it *361 did not raise revenue. The Kansas Supreme Court concluded that the primary purpose of the fund surcharge was not to raise revenue. As such, the surcharge was not a tax. Citizens' Utility Ratepayer Bd., 264 Kan. at 400, 956 P.2d at 709-10.
Also, the North Carolina Supreme Court, in State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn., 336 N.C. 657, 446 S.E.2d 332 (1994), upheld a statute authorizing the utility commission to create a fund for the expansion of natural gas service to the areas where there was no service. The utility commission ordered millions of dollars in supplier refunds to be deposited into the expansion fund. This order was challenged by a citizen's group, who argued that the capture of the supplier refund constituted a tax and because the funds were not used for the public purpose, it was an improper exercise of taxing power under the North Carolina Constitution. The Supreme Court concluded that the capture of the refunds was not an unconstitutionally levied tax.
In Consumer Power v. ABATE, 205 Mich.App. 571, 518 N.W.2d 514 (1994), the Michigan Court was faced with a similar situation when a private company sought to impose rate surcharges to recover costs associated with its participation in an energy assistance program. A challenger argued that the surcharges surmounted to a tax on qualified ratepayers. The Supreme Court found that the surcharges were intended to benefit only the participating utilities and not the general public; thus the surcharges were not an unconstitutionally levied tax.
Here, in the case sub judice, the contributions associated with the SUSF are imposed only on end-user revenues from the TSP and are not intended to raise revenue. Rather, the LPSC is using its regulatory authority to allocate the costs for the administration of a regulatory program. As such, the trial court correctly found that the SUSF was, in fact, a "fee" and not an unconstitutional levied "tax." Because we have determined that the SUSF is a "fee", there is no need to discuss the limitations to the "Power to Tax" delineated in LSA-Const. art. VII, § 2.[24]
In determining whether the LPSC acted within the scope of its authority when it issued the order requiring all TSPs, including wireless carriers, to contribute to the SUSF which will subsidize the rural telephone companies,[25] we note, *362 as supported by the above jurisprudence, that the LPSC, unlike other agencies, derives its authority and jurisdiction from the LSA-Const. art. IV, § 21, which gives the LPSC power to regulate, adopt, and enforce rules and regulations necessary as it relates to public utilities, i.e. TSP. The mandate imposed on all the TSPs, including the wireless carriers, is expressly authorized by the Telecommunications Act of 1996 and 47 U.S.C. § 254(f),[26] which mandate that TSPs contribute to the federal universal service fund and empower states to collect fees to establish SUSF including requiring contributions from wireless carriers.
After a thorough review of LSPC's General Order dated April 29, 2005, we conclude that the implementation of the SUSF is consistent with the Louisiana Constitution as well as with the Telecommunications Act of 1996. Because the LPSC's order is accorded great weight, it may not be overturned absent an affirmative showing that the decision was arbitrary, capricious, or a clear abuse of discretion or not based on the factual evidence presented.
AFFIRMED.
NOTES
[1] "TSP" is a generic term used to refer to any person or entity offering and/or providing telecommunications services for compensation or monetary gain.
[2] 47 U.S.C. § 151 provides that:

For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.
[3] See, LPSC Order No. U-23267. In 1989, because the LPSC concluded that the LOS plan would reduce revenues by $19-20 million, the LPSC decreased BellSouth's rate by $19.4 million, which adjusted its portion of the shared intraLATA revenues with the ILECs to ensure that their revenues were not adversely affected by LOS.
[4] See, LPSC Order No. U-17949, Subdocket "F." "IntraLATA" is defined as "telecommunications services that originate and end in the same Local Access and Transport Areas."
[5] See, LPSC Order No.U-23267.
[6] 47 U.S.C. § 254(b)(3) provides, in pertinent part, that:

Consumers in all regions of the Nation, including low-income consumers and those in rural, insular, and high cost areas, should have access to telecommunications and information services, including interexchange services and advanced telecommunications and information services, that are reasonably comparable to those services provided in urban areas and that are available at rates that are reasonably comparable to rates charged for similar services in urban areas.
[7] Prior to the passage of the Act, local telephone service was generally provided by carriers that provided such service as a regulated monopoly.
[8] 47 U.S.C. 253 provides, in pertinent part, that:

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
[9] 47 U.S.C. § 254(d) provides that:

Every telecommunications carrier that provides interstate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, to the specific, predictable, and sufficient mechanisms established by the Commission to preserve and advance universal service. The Commission may exempt a carrier or class of carriers from this requirement if the carrier's telecommunications activities are limited to such an extent that the level of such carrier's contribution to the preservation and advancement of universal service would be de minimis. Any other provider of interstate telecommunications may be required to contribute to the preservation and advancement of universal service if the public interest so requires.
[10] Section 254(f) of the Federal Act provides that:

(f) A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms.
[11] Specifically, the general order's provision allowing wireless carriers to pass along the costs involved in the universal service fund fees provided:

[LPSC] Staff recommends that each TSP contributing to the SUSF should be free to determine whether to explicitly recover the contribution through an end-user surcharge appearing on the monthly bill or to incorporate the amount into the cost of the carrier's service offering.
[12] LSA-R.S. 49:963 provides, in pertinent part, that:

A. (1) The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located.
* * * * *
C. The court shall declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with required rulemaking procedures.
D. An action for a declaratory judgment under this Section may be brought only after the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question and only upon a showing that review of the validity and applicability of the rule in conjunction with review of a final agency decision in a contested adjudicated case would not provide an adequate remedy and would inflict irreparable injury.
[13] LSA-Const. art. VII, § 1 provides that:

(A) Except as otherwise provided by this constitution, the power of taxation shall be vested in the legislature, shall never be surrendered, suspended, or contracted away, and shall be exercised for public purposes only.
(B) The power to tax may not be exercised by any court in the state, either by ordering the levy of a tax, an increase in an existing tax, or the repeal of an existing tax exemption or by ordering the legislature or any municipal or parish governing authority or any other political subdivision or governmental entity to do so.
[14] BellSouth also maintained that T-Mobile did not possess a real interest in this matter as the contribution will be collected from the consumer.
[15] LSA-R.S. 45:1192 provides, in pertinent part, that:

If any of the persons . . . shall be dissatisfied with any order entered by the commission, . . . the dissatisfied person may, within forty-five days after the order made by the commission becomes effective, file in a court at the domicile of the commission, a petition setting forth the particular cause of objection to the order or regulation of the commission complained of. . . . The court may affirm the order of the commission complained of, or it may change, modify, alter, or set it aside, as justice may require.
[16] LSA-Const. art. VII, § 3(A) provides that:

The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.
[17] As it relates to cross motions for partial summary judgment, which were filed on September 15, 2005, the parties waived service of process and agreed to submit the motion on briefs. The trial court denied T-Mobile's motion, but granted the LPSC's motion.
[18] On September 19, 2005, T-Mobile filed a First Amended Petition, naming the Gautreau Group, LLC, as an additional defendant. The LPSC hired the Gautreau Group, LLC, to serve as the Universal Service Fund Administrator to handle the administrative duties associated with the SUSF. Gautreau was hired to collect the contributions paid by the TSPs and disburse the monies according to the April 29, 2005, General Order. T-Mobile argued that it or any other TSP, which was obligated to pay for the administrator's services, was permitted to participate in or review the selection of the administrator.
[19] LSA-Const. art. IV, § 21(E) provides:

Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.
[20] A thorough review of the record revealed that T-Mobile made the same argument in its preliminary injunction, TRO, and Motion for Partial Summary Judgment; therefore, we need only briefly refer to these matters.
[21] See, Radiofone, supra, where this Court held that a city's occupational license tax, which was greater than any imposed by the state and was not authorized by law enacted by the prescribed legislative supermajority, is unconstitutional.
[22] In Audubon, where an insurer challenged the constitutionality of an act, which required the insured to pay an additional percentage of its premium to, not only the Louisiana Insurance Rating Commission, but the Firefighters' Retirement System, this Court held that the legislative act levied a "new tax" because the primary purpose for the assessment was to raise revenue. This Court specifically noted that the assessment of charges for the purpose of improving fire protection and reducing fire insurance rates is not an incident of the insurance rating commission's regulatory function. Thus, this Court concluded that the assessment was unconstitutional.
[23] In Safety Net, a nonprofit corporation filed a mandamus action against the city clerk of court and the city judge to enforce collection of additional fees in criminal and civil cases for the benefit of the nonprofit corporation. In that case, this Court held that the fees imposed constituted a tax which violated the separation of powers provision because the fees were not related to the administration of justice.
[24] LSA-Const. art. VII, § 2 provides that:

The levy of a new tax, an increase in an existing tax, or a repeal of an existing tax exemption shall require the enactment of a law by two-thirds of the elected members of each house of the legislature.
[25] T-Mobile argues in brief that 47 U.S.C. § 332(C)(3) preempts the State's authority over cellular telephone rates and services, providing that "no State . . . shall have any authority to regulate the entry of or the rates charged" by wireless carriers. T-Mobile argues that the States have the authority to regulate "other terms and conditions of service," however, States may exercise ratemaking jurisdiction over wireless carriers only by obtaining authorization from the FCC. T-Mobile argues that the LPSC has not obtained such authorization.

Procedurally, we note that the issue is not properly before this Court since T-Mobile failed to plead it in its Petition for Declaratory Judgment and Injunctive Relief; it was not ruled upon by the trial court; nor was it listed as an Assignment of Error in T-Mobile's brief submitted to this Court.
Specifically, T-Mobile argues that the LPSC does not exercise rate-making jurisdiction over wireless carriers pursuant to the Omnibus Reconciliation Act of 1993, which provides in pertinent part, that:
. . . no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service . . .
See, 47 U.S.C. § 332(c)(3)(A).
T-Mobile maintains that pursuant to this statute, States may exercise ratemaking jurisdiction over wireless carriers only by first obtaining authorization from the FCC. T-Mobile submits that LPSC has failed to sought such authorization.
In contrast, the LPSC asserts that 47 U.S.C. § 254(f) authorizes the contribution to the SUSF from all TSPs, including wireless carriers. In Bell Atlantic Mobile v. Dept. of Public Utility Control, 253 Conn. 453, 754 A.2d 128 (6/13/00), a commercial mobile radio service provider (wireless carrier), which was licensed by the Federal Communications Commission (FCC) to provide cellular service, sought judicial review of the Connecticut Department of Public Utility Control's order requiring all telecommunications providers, including wireless providers, to contribute to the state lifeline program according to their intrastate and interstate gross revenues subject to the Connecticut sales tax. The wireless provider argued that 47 U.S.C. 322(c)(3)(A) precludes the Department from imposing a funding requirement on wireless providers. The Connecticut Supreme Court thoroughly analyzed both sections 332(c)(3)(A) and 254(f) of title 47 and concluded that the Department was authorized to impose a funding requirement on wireless providers as the federal law did not preempt state requirement of provider participation in universal service programs.
This case is parallel to Bell Atlantic in that T-Mobile argues that the LPSC, like the Connecticut Department of Public Utility, is not authorized to mandate wireless providers to contribute to the SUSF.
[26] 47 U.S.C.A. § 254(f) provides that:

A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or standards that do not rely on or burden Federal universal service support mechanisms.